O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA SUE L., <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] <br> Defendant. | Case No. 2:17-cv-04728- KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

On September 10, 2013, Pamela Sue L. ("Plaintiff") filed an application for disability insurance benefits ("DIB") alleging disability since October 30, 2012. Administrative Record ("AR") 177-80.

On April 15, 2016, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE"). AR 36-72. On June 1, 2016, the ALJ issued a

---

[1] As of November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations performing the duties and functions not reserved to the Commissioner of Social Security."

1

decision denying Plaintiff's DIB application. AR 16-36. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "degenerative disc disease of the cervical and lumbar spinal areas; osteoarthritis of the left hip; status post right hip orthoplasties; left knee meniscal tears; status post right knee arthroscopy; and fibromyalgia." AR 21. Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, but "with no more than frequent reaching, handling, and fingering bilaterally" and "no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling" and "no more than occasional interaction with coworkers, supervisors, and the public." AR 24. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Generally, light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday. Social Security Ruling ("SSR") 83-10.

The VE testified that Plaintiff's past work could be categorized as a billing clerk, Dictionary of Occupational Titles ("DOT") 214.362-042. AR 64-65. The VE testified that a person with Plaintiff's RFC and transferrable skills could work as a billing clerk or an accounting clerk, DOT 216.482-010. AR 68. Per the DOT, both jobs are sedentary and require Reasoning Level 4.[2]

---

[2] The DOT specifies the General Educational Development ("GED") reasoning level required for each listed job using six defined levels. Reasoning Level 1 requires the ability to "carry out simple one- or two-step instructions," whereas Reasoning Level 6 requires the application of "principles of logical or scientific thinking to a wide range of intellectual and practical problems." DOT, app. C, § III. In between these two extremes, Reasoning Level 3 requires a worker to "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Id. Reasoning Level 4 requires a worker to "Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." Id. Reasoning Level 5 requires a worker to "Apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical instructions in mathematical or diagrammatic form. Deal with several abstract and concrete variables." Id. A limitation to simple, repetitive tasks is

2

Based on the above-stated RFC and the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a billing clerk, both as typically and as actually performed. AR 30. In the alternative, the ALJ found that Plaintiff could work as an accounting clerk, DOT 216.482-010. AR 31. The ALJ concluded that Plaintiff was not disabled. Id.

On June 9, 2016, Plaintiff filed with the Appeals Council a request for review of the ALJ's decision. AR 173-75. On June 20, 2017, the Appeals Council denied Plaintiff's request for review and affirmed the ALJ's decision. AR 1-6. This appeal followed.

## II.

## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

---

consistent with a limitation to Reasoning Level 2. Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015).

3

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006). Remand is appropriate where "some features of the record suggested that the error was harmless, others suggested the opposite" and "the circumstances of the case show a substantial likelihood of prejudice." McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011). "By contrast, where harmlessness is clear and not a 'borderline question,' remand for reconsideration is not appropriate." Id.

### III.
### ISSUE PRESENTED

Plaintiff's appeal presents the following five issues:

Issue One: Whether the ALJ erred in finding that Plaintiff did not have a "severe" mental impairment;

Issue Two: Whether the ALJ erred in determining Plaintiff's mental residual functional capacity;

Issue Three: Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony;

Issue Four: Whether the ALJ erred in evaluating the opinions of Plaintiff's treating physicians regarding her physical limitations; and

Issue Five: Whether the ALJ erred in finding that Plaintiff can perform her past relevant work and failing to apply medical vocational guidelines.

(Dkt. 23, Joint Stipulation ["JS"] at 2.)

# IV.

# DISCUSSION

A. **ISSUE ONE: Plaintiff's Alleged Mental Impairments.**

    **1. The ALJ's Findings.**

Plaintiff identified "depression" as a condition that limits her ability to work. AR 193. The following medical sources offered opinions or evidence concerning Plaintiff's depression:

    • <u>Dr. Ritvo</u>: In February 2013, Plaintiff underwent a consultative psychiatric evaluation with Dr. Ritvo. AR 312-16. Plaintiff told Dr. Ritvo about the multitude of medical and family-care issues she had experienced in the past years and reported that these issues, along with her chronic pain, caused her "great distress." AR 312. "She finds herself crying spontaneously during the day and has difficulty concentrating." <u>Id.</u> Dr. Ritvo found Plaintiff to be a reliable historian. <u>Id.</u> Dr. Ritvo noted that Plaintiff was prescribed Lexapro, a selective serotonin reuptake inhibitor used to treat depression and anxiety, by a pain management specialist. <u>Id.</u> Plaintiff reported poor appetite and fitful sleeping due to pain. <u>Id.</u> She denied hallucinations and suicidal ideation. <u>Id.</u> Plaintiff also denied that she participated in any outside activities or hobbies. AR 314. She could leave the house alone and handle money. <u>Id.</u>

    Dr. Ritvo observed that Plaintiff's thought process was "coherent and organized" and she "appeared to be of at least average intelligence." <u>Id.</u> Plaintiff performed well on basic tests of knowledge, memory, and cognition. AR 314-15. Plaintiff made good eye contact during the interview and displayed a pleasant, cooperative manner. AR 314. Despite this, Dr. Ritvo observed that Plaintiff "was obviously depressed and in a good deal of physical discomfort throughout the interview." <u>Id.</u> Dr. Ritvo found "no evidence of exaggeration or manipulation." <u>Id.</u> Dr. Ritvo diagnosed her as suffering from "mood disorder secondary to chronic medical conditions and pain" with a "fair" prognosis. AR 315-16. Among other

findings, he opined that she had "moderate" impairment in her ability to "understand, remember, or complete complex commands," her ability "to respond to change in the normal workplace setting," and her ability "to maintain persistence and pace." AR 316.

• <u>Dr. Bilik</u>: On March 21, 2014, State agency medical reviewing psychologist Dr. Bilik reviewed Plaintiff's medical records and offered opinions concerning Plaintiff's mental RFC. AR 85-87. Per Dr. Bilik, Plaintiff did not have limitations on understanding and remembering, but she did have limitations sustaining concentration and persistence. AR 85. He found no significant limitations in various areas of mental functioning, but he found that Plaintiff was "moderately limited" in (1) carrying out detailed instructions, (2) maintaining attention and concentration for extended periods, (3) completing a normal schedule without interruptions from psychologically based symptoms or an unreasonable number of breaks, (4) interacting appropriately with the public, (5) accepting instructions and responding appropriately to criticism from supervisors, and (6) responding appropriately to changes in the work setting. AR 85-86. He expressly found she was "not limited to SRT [simple repetitive tasks]." AR 86.

Dr. Bilik determined that Plaintiff could not perform her past relevant work. AR 87. When asked to explain that finding, he stated, "She is capable of simple and some detailed tasks. She is noted to likely have difficulty with complex tasks and should also be limited in public contact." <u>Id.</u>

• <u>Dr. Williams</u>: On July 25, 2014, State agency psychiatrist Dr. Williams opined that Plaintiff had the same limitations as found by Dr. Bilik. AR 101-02. When asked to explain his findings "in narrative form," he wrote, "The claimant can carry out simple and some detailed – but perhaps not complex – instructions over the course of a normal workweek." AR 102. Dr. Williams opined that Plaintiff could not do her prior work, reasoning as follows: "Clmnt is NOT limited to SRT. She is capable of simple and some detailed tasks. She is noted to likely

have difficulty with complex tasks …." AR 103.

• <u>Dr. Hirt</u>: Dr. Hirt is one of Plaintiff's treating physicians. As early as March 2011, he diagnosed Plaintiff with "major depression" and prescribed Prozac. AR 513; <u>see also</u> AR 517 ("She also has a pretty significant history of anxiety and depression with fibromyalgia. She has been taking benzodiazepines, Soma, and other medications."). Dr. Hirt was also the attending physician for Plaintiff's visit to the emergency room in February 2014 complaining of nausea and abdominal pain. AR 431-32. He observed, "This is a tired-appearing female. She looks volume depleted." AR 431. In April 2014, Dr. Hirt completed a physical RFC questionnaire. AR 476-79. He noted that Plaintiff was diagnosed with depression and is "intolerant of basic stressors of work environment." AR 476, 478.

At the time of the hearing, Plaintiff was taking Wellbutrin, an antidepressant, prescribed by Dr. Hirt. AR 53. Records from Dr. Hirt also show prescriptions for Soma, Ambien, and Xanax. AR 613.

• <u>Dr. Singh</u>: Dr. Vikram Singh was Plaintiff's pain management specialist and surgeon. AR 338, 581. The record contains lists of medications he prescribed to Plaintiff at various times, including MS-Contin, Dilaudid/hydromorphone, Soma/carisoprodol, Valium/diazepam, and Celebrex/celecoxib. <u>See, e.g.</u>, AR 337, 347, 356, 360, 366-69. At the time of the hearing, Plaintiff was taking Lexapro prescribed by Dr. Singh. AR 53, 351.

Various records from office visits note that Plaintiff had a "normal" mood/affect. <u>See, e.g.</u>, AR 341, 362, 573-76, 579, 583-86, 596-98, 600. In January 2015, however, he checked the "normal" box but also wrote, "very depressed & emotionally worse" and marked "depression" as a diagnostic impression. AR 588; <u>see also</u> AR 587, 585, 589-92, 595, 603 (noting depression in 2014 and 2015), AR 605 ("patient is very emotional at her office visit due to pain"), AR 606 (in October 2013, marked "depressed" affect and "tearful, was feeling over-prescribed meds, depression").

In 2013, Plaintiff completed "Patient Comfort Assessment Guide" forms for Dr. Singh identifying symptoms of her pain and side effects from her medication. See AR 343 (not affecting her "thinking" but affecting "ability to concentrate" at level 5/10), AR 364 (affecting "ability to concentrate" at level 6/10). Dr. Singh completed a physical RFC questionnaire in May 2014. AR 480-83. He identified Plaintiff as suffering "anxiety, depression secondary to pain" and opined that she "cannot tolerate … stressful environment." AR 482.

• Dr. Dhiman: On January 18, 2014, Dr. Dhiman completed an internal medical evaluation. AR 404-09. While his report focuses on Plaintiff's physical conditions, he noted that she complained of "chronic fatigue," was taking Lexapro, and "her mood is depressed." AR 405-06. He also noted, "She is currently on multiple narcotics and muscle relaxants which can cause slowness in the mentation." AR 408.

### 2. The ALJ's Findings.

The ALJ discussed the medical evidence of Plaintiff's depression. AR 22. The ALJ noted that the record does not contain evidence of treatment with a mental health specialist since the alleged onset date. Id. The ALJ acknowledged that Plaintiff had difficulty obtaining mental health treatment "due to her limited financial resources and lack of health insurance." AR 22, citing AR 54.

The ALJ discussed the opinions of Drs. Ritvo, Bilik, and Williams, including their findings of Plaintiff's moderate mental limitations. AR 22-23. After reviewing this evidence, the ALJ acknowledged that "[t]hese opinions are deserving of some probative weight because Dr. Ritvo had the opportunity to examine the claimant and consider her subjective symptoms, while Dr. Bilik and Dr. Williams had the opportunity to review and consider the relevant documentary evidence." AR 23. Nevertheless, the ALJ concluded, "in light of the largely unremarkable clinical findings with respect to the claimant's mental condition, as well as the lack of evidence of specialized mental health treatment, the undersigned finds the

claimant's depression did not cause the degree of functional limitation assessed by Dr. Ritvo, Dr. Bilik, and Dr. Williams." AR 23.

Next, employing the special technique for evaluating the severity of mental impairments (20 C.F.R. §§ 404.1520a), the ALJ found that Plaintiff's depression did not limit her activities of daily living, mildly limited her social functioning, and mildly limited her concentration, persistence, and pace. AR 23. Based on these findings, the ALJ concluded that Plaintiff's depression was not severe. AR 21.

In Plaintiff's RFC, the ALJ did not limit the complexity of Plaintiff's potential work. AR 24. The only limitation to accommodate mental impairment is a limitation to "no more than occasional interaction" with other people. Id. The ALJ included that limitation to give Plaintiff "the benefit of the doubt." AR 23.

### 3. Analysis of Claimed Error.

Plaintiff argues that the ALJ erred by rejecting "all three medical opinions in the record" which attributed moderate functional limitations to Plaintiff's mood disorder and "failing to articulate any specific and legitimate reasons based on substantial evidence in the record" for doing do. (JS at 6.) The ALJ gave as reasons (1) inconsistency with "largely unremarkable clinical findings" and (2) "lack of evidence of specialized mental health treatment." AR 23.

Neither of these reasons justifies rejecting the opinions of Drs. Bilik and Williams (who relied on Dr. Ritvo's examination) that Plaintiff has some moderate limitations. First, Plaintiff's medical records cannot be fairly characterized as containing "largely unremarkable clinical findings" about her mental health. As summarized above, multiple doctors diagnosed her with a mood disorder or depression (AR 315-16, 482, 513-17, 588), observed her displaying depressive symptoms (AR 314, 405-06), prescribed her antidepressants (AR 53, 351, 613), and noted the possible side effects of such medications on concentration (AR 364, 408, 606). Defendant argues, "if her depression were as severe as alleged, it is reasonable to expect that it be reflected in her treatment records." (JS at 8.) Per the

citations in this paragraph, Plaintiff's depression *is* reflected in her treatment records.

Second, while Plaintiff did not have a treating psychologist or psychiatrist, she did have a pain management specialist who diagnosed her as suffering from depression secondary to pain and treating physicians who prescribed her an array of medications to treat mental conditions, including Prozac, Ambien, Lexapro, Wellbutrin, Valium, and Xanax. AR 337, 351, 513, 613. Given this history and Plaintiff's testimony that she lacked insurance benefits to see a psychiatrist (AR 54),[3] Plaintiff's failure to seek specialized mental health treatment has no tendency to suggest that her mental impairments are less limiting than Drs. Ritvo, Bilik, and Williams opined. Indeed, all three of those doctors knew that Plaintiff had not obtained specialized mental health treatment when they gave their opinions.

### 4. Harmless Error Analysis.

Defendant argues, "to the extent the ALJ's step 2 finding was in error, any such error would be harmless because the ALJ fully considered all of Plaintiff's impairments, including her allegations with respect to depression, when crafting his RFC finding." (JS at 8-9.) In the RFC, however, the ALJ did not limit the reasoning level of Plaintiff's potential work or restrict Plaintiff against sustained concentration or workplace stressors, such as dealing with disputed bills or collections. Absent such restrictions or other accommodations of the functional limitations opined by the medical sources, and absent supported reasons for rejecting those opinions, the Court cannot conclude that the ALJ's RFC determination is supported by substantial evidence, regardless of whether Plaintiff's depression was considered "severe."

---

[3] See Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) ("[A] disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment. ").

10

For example, while Drs. Bilik and Williams opined that Plaintiff could do more than simple, repetitive tasks (i.e., reasoning level 2), they also opined that Plaintiff could not do her past, relevant work (which per the VE and DOT, required reasoning level 4). Unfortunately, their opinions (written in terms of "detailed" versus "complex" tasks) do not clearly track the GED levels defined by the DOT. If their opinions support a conclusion that Plaintiff is only capable of reasoning level 3, then the ALJ's failure to provide supported reasons for rejecting their opinions, coupled with his finding that Plaintiff could do work requiring reasoning level 4, would not be harmless error.

The ALJ did not discuss whether Plaintiff's reasoning abilities were limited to a particular level, either due to her depression or the side effects of her numerous pain medications. A person taking multiple opiates might not be able to sustain the focus on detailed financial records needed to work fulltime as a billing clerk or accounting clerk. Thus, the circumstances of the case show a substantial likelihood of prejudice. Compare Miranda v. Berryhill, No. CV 17-7616-JPR, 2017 U.S. Dist. LEXIS 196330, at *14-16 (C.D. Cal. Nov. 29, 2017) (finding RFC restriction to "moderately complex tasks with a reasoning level of four or below" was supported by medical evidence of "mild" limitations in various areas of mental functioning).

Given the above discussion, on remand, the ALJ should reevaluate the medical evidence at step two with respect to Plaintiff's mental impairments.[4] Regardless of the step-two outcome, the ALJ should also consider and discuss whether Plaintiff's reasoning abilities are limited to a particular level, either due to her depression or her pain medications. The ALJ should then proceed through any additional necessary steps in the five-step process. The ALJ may also consider the other claims of error Plaintiff raised on appeal in this case.

---

[4] The Court expresses no opinion on whether Plaintiff's depression is a severe impairment.

11

# V.
# CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING for further proceedings consistent with this order.

DATED: August 06, 2018

*Karen E. Scott*
_____
KAREN E. SCOTT
United States Magistrate Judge